IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STEPHEN J. TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-cv-03312 |
| | ) Judge Crenshaw / Frensley |
| SHERIFF CHRIS DAVIS, et al, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**I. Introduction and Background**

This matter is before the Court upon Defendant's Motion for Summary Judgment.[1] Along with his Motion, Defendant has contemporaneously filed a supporting Memorandum of Law (Docket No. 21), a "Statement of Material and Undisputed Facts" (Docket No. 22), and his Affidavit ("Def. Aff.") (Docket No. 23).

Plaintiff has not responded to either the instant Motion or to Defendant's Statement of Material and Undisputed Facts, nor has Plaintiff filed his own Statement of Undisputed Material Facts.

Plaintiff filed this pro se, in forma pauperis action pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that Defendant, solely in his official capacity as Sheriff of Humphrey's County, violated his Eighth Amendment rights when Humphreys County employees failed to take him to

---

[1] After conducting his initial frivolity review, Judge Crenshaw, in his Memorandum Opinion and accompanying Order, dismissed all Defendants and claims except Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Davis. *See* Docket Nos. 4, 5. Accordingly, Defendant Davis is the only remaining Defendant in this action. *Id.*

the emergency room after he was "jumped by 5 inmates" in the Humphreys County Jail and sustained a bloody nose and lip, swollen eyes, and chipped teeth. Docket No. 1. Plaintiff avers, "They told us they had to call the Nurse and the Sheriff Chris Davis to see if I should go [to the hospital]. Neither was there to see me . . . " *Id.* at 8. As to Defendant specifically, Plaintiff avers, "Sheriff Chris Davis denied me of medical treatment. Sheriff Davis never seen how bad my injuries was to make that call." *Id.* at 6. Plaintiff seeks "$200,000 in damages for starters." *Id.* at 7.

Defendant filed the instant Motion and supporting materials arguing that this action should be dismissed because: (1) Plaintiff did not have a serious medical need; (2) no Humphreys County employee was deliberately indifferent to any serious medical need; (3) no official Humphreys County policy, practice, or custom was the driving force behind any alleged constitutional violation; and (4) any state law claims would be barred by the Tennessee Governmental Tort Liability Act. Docket No. 20.

For the reasons set forth below, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 20) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

## II. Undisputed Facts[2]

Plaintiff was booked into the Humphreys County Jail on June 24, 2016 at approximately 7:45 pm on charges of domestic assault and simple possession. Docket No. 23, Def. Aff., ¶ 5, Ex. 1.

---

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

At approximately 9:20 pm, Plaintiff was involved in a fight with several other inmates. *Id.*, ¶ 6, Ex. 2. Plaintiff had blood coming from his nose and his lip, and he had at least one chipped tooth. *Id.* After the fight, Correctional Officer Potvin brought Plaintiff to the booking hallway. *Id.* Correctional Officer Jarnagin called the Jail Administrator to inform him of what happened, and also called Jail Nurse Ragan and informed him of Plaintiff's condition. *Id.* Nurse Ragan advised Correctional Officer Jarnagin that Plaintiff did not need to be taken to the emergency room, but instead should be placed on medical watch and observed. *Id.* Plaintiff was placed in the detox cell for observation, and released the following day at 10 am. *Id., see also,* Ex. 2.

Sheriff Chris Davis was, at all times relevant to the instant action, the Sheriff of Humphreys County, Tennessee. *Id.*, ¶ 3. In his capacity as Sheriff, he has access to inmate records and jail records, including booking reports and incident reports, which are kept in the regular course and scope of operating the Humphreys County Jail. *Id.* Also in his capacity as Sheriff, Defendant has knowledge of the policies and procedures applicable to the Humphreys County Jail generally. *Id.*, ¶ 4. Humphreys County has a policy in place requiring that "[n]ecessary medical services will be provided to all inmates incarcerated in the Humphreys County Jail. This can include, but not limited to first aid, doctors office visits, or treatment in the emergency room." *Id.*, ¶ 7, Ex. 3. All correctional officers and Humphreys County Jail employees are trained on the Jail policies and procedures and are expected to follow them. *Id.*, ¶ 4.

At no time during Plaintiff's incarceration between June 24th and June 25th of 2016 did Defendant interact with Plaintiff. *Id.*, ¶ 8. Additionally, at no time during Plaintiff's

3

incarceration was Defendant made aware of Plaintiff's fight, alleged injuries, or treatment provided for injuries. *Id.* Moreover, the Jail nurse on duty at the time during Plaintiff's incarceration was not a Humphreys County employee, but rather, is employed by a third party medical provider who contracts to provide medical services in the Jail. *Id.,* ¶ 9.

### III.  Law and Analysis

### A.  Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b.  Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the instant Motion on October 18, 2017.  Docket No. 20.  Plaintiff has failed to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c.  Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed.  Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g.  Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

4

Plaintiff has failed to respond to Defendant's Statement of Material and Undisputed Facts (Docket No. 22) or file his own Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

## B.  Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met his burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

5

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C.  42 U.S.C. § 1983**

    **1.  Generally**

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. §

1983.[3]  *See* Docket No. 1.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**2.  Eighth Amendment**

**a.  Generally**

The Eighth Amendment provides that:

---

[3] Although Plaintiff alleges that his Eighth Amendment rights to medical care were violated, Plaintiff was a pretrial detainee, not a convicted prisoner; therefore his claims actually fall under the Fourteenth Amendment's Due Process Clause.  Because the analysis is essentially the same, the undersigned will refer to Plaintiff's claims as he has lodged them.

7

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

### b. Deliberate Indifference To Serious Medical Needs

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104, 97 S. Ct. at 291.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104. This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the

8

accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id*. (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim).

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (*citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth

9

Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer v. Brennan*, 511 U.S. 825, 837, 844, 114 S. Ct. 1970, 1979, 1982-83, 128 L. Ed. 2d 811 (1994)).

### 3. Official Capacity Claims

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*. Defendant, as Sheriff of Humphreys County, stands in the shoes of the entity he represents; namely, Humphreys County, Tennessee.

Because §1983 does not permit the imposition of liability based upon *respondeat superior* (*Polk County v. Dodson*, 454 U.S. 312, 325 (1981)), in order for Defendant to be held liable, Plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). *See also, Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690-91 (1978) (In order to find a governmental entity liable, Plaintiff must establish that (1) he / she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).

### D. The Case at Bar

As an initial matter, Plaintiff does not identify any official Humphreys County policy, practice, or custom, much less contend that any official Humphreys County policy, practice, or custom caused the alleged deprivation of his rights. Moreover, it is undisputed that Humphreys County has a policy in place requiring that "[n]ecessary medical services will be provided to all inmates incarcerated in the Humphreys County Jail. This can include, but not limited to first aid, doctors office visits, or treatment in the emergency room" (Def. Aff., ¶ 7, Ex. 3), and that all correctional officers and Humphreys County Jail employees are trained on the Jail policies and procedures and are expected to follow them (*id.*, ¶ 4). Because Plaintiff does not allege, much less establish, that the alleged violations of his rights were caused by an official Humphreys County policy, practice, or custom, he cannot sustain his official capacity claims, and this action should be dismissed.

Furthermore, Plaintiff cannot establish either that he had a serious medical need or that any Humphreys County employee was deliberately indifferent to any such need. In particular, it is undisputed that: (1) after the fight occurring around 9:20 pm, Correctional Officer Potvin brought Plaintiff to the booking hallway (*id.*, ¶ 6, Ex. 2); (2) Correctional Officer Jarnagin called the Jail Administrator to inform him of what happened, and also called Jail Nurse Ragan and informed him of Plaintiff's condition (*id.*); (3) Nurse Ragan is not a Humphreys County employee, but rather, is employed by a third party medical provider who contracts to provide medical services in the Jail (*id.*, ¶ 9); (4) Nurse Ragan advised Correctional Officer Jarnagin that Plaintiff did not need to be taken to the emergency room, but instead should be placed on medical watch and observed (*id.*); and (5) Plaintiff was placed in the detox cell for observation, and released the following day at 10 am (*id., see also,* Ex. 2). Because Plaintiff cannot establish

11

either that he had a serious medical need or that any Humphreys County employee was deliberately indifferent to any such need, Plaintiff again cannot sustain his official capacity claims, and this action should be dismissed.

Finally, with regard to Plaintiff's allegations against Defendant Davis, it is undisputed that, at no time during Plaintiff's incarceration between June 24th and June 25th of 2016 did Defendant Davis interact with Plaintiff nor was Defendant Davis made aware of Plaintiff's fight, alleged injuries, or treatment provided for injuries. *Id.*, ¶ 8. Plaintiff simply cannot hold Defendant Davis responsible.

## IV. Conclusion

For the foregoing reasons, the undersigned finds that there are no genuine issues as to material fact and that Defendant is entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No. 20) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge

13